IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | Case No. 1:09cr430 |
| v. | ) | |
| | ) | Honorable Gerald Bruce Lee |
| LITCIA LINARES, | ) | |
| | ) | Sentencing Date: May 13, 2010 |
| Defendant. | ) | |

POSITION OF THE UNITED STATES WITH RESPECT TO SENTENCING

The United States hereby submits its position on the sentencing of the defendant, Litcia Linares, in accordance with U.S.S.G. § 6A1.2 and the policy of this Court.

I.  Background

On January 8, 2010, the defendant pled guilty to Count One of the superseding indictment charging her with conspiracy to commit wire fraud, in violation of 18 U.S.C. § 1349. The defendant's conviction stems from her role in a wide-ranging mortgage fraud conspiracy, in which she and others secured fraudulent loans for "straw buyers" with good credit to purchase properties for other individuals.

The Probation Office calculated the defendant's total offense level as 26, her criminal history category as I, and the applicable Guidelines range as 63 to 78 months of imprisonment. The government agrees that the calculations in the Presentence Report are accurate. However, for the reasons set forth below, the United States requests that the Court sentence the defendant within the Guidelines range established by the plea agreement entered into between the defendant and the government.

In exchange for the defendant's early guilty plea, the government agreed to recommend a

loss of more than $400,000 but less than $1,000,000, and no enhancement for the number of victims involved, resulting in a total offense level of 18 and an adjusted Guidelines range of 27 to 33 months of imprisonment. This loss figure and victim count is tied to the defendant's direct conduct in the conspiracy, rather than the overall loss of the conspiracy.[1] In accord with the terms of the defendant's plea agreement and based on the factors set forth in 18 U.S.C. § 3553(a), the United States requests that this Court sentence the defendant to 27 months of imprisonment.

## II.    Argument

Although the Supreme Court rendered the federal Sentencing Guidelines advisory in *United States v. Booker*, 543 U.S. 220 (2005), "a sentencing court is still required to 'consult [the] Guidelines and take them into account when sentencing.'" *United States v. Clark*, 434 F.3d 684, 685 (4th Cir. 2006) (quoting *Booker*, 543 U.S. at 264). The Supreme Court has directed that district courts "begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *Gall v. United States*, 128 S. Ct. 586, 597 (2007). However, the sentencing court "may not presume that the Guidelines range is reasonable." *Nelson v. United States*, 129 S. Ct. 890, 892 (2009). The "Guidelines should be the starting point and the initial benchmark," but the sentencing court must also "consider all of the § 3553(a) factors" in determining the appropriate sentence. *Id.; see also Clark*, 434 F.3d at 685. Pursuant to § 3553(a), the district court should consider: (1) the nature and circumstances of the offense and the history and

---

[1] The addendum to the Presentence Report correctly states that the total loss figure for the properties in which the defendant was directly involved is over $1,000,000. However, the government was unaware of the defendant's involvement in some of those transactions at the time the plea offer was extended.

characteristics of the defendant; (2) the need for the sentence imposed; (3) the kinds of sentences available; (4) the Sentencing Guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted disparities; and (7) the need to provide restitution to victims of the offense. Ultimately, the sentence imposed must meet a standard of reasonableness. *See Booker*, 543 U.S. at 260-61.

The defendant, a real estate agent, conspired with her then-husband (Grovert Rojas) and his brothers (Ruben and Jaime Rojas), his sister (Lourdes Almanza), and other individuals to defraud banks into lending funds for mortgages that the buyers were not qualified to receive. The defendant's co-conspirators recruited and paid several "straw buyers" to use their names and credit to secure financing for the properties. The straw buyers often obtained loans for 100% of the purchase price of the properties and often purchased multiple properties within a short period of time. The straw buyers signed false and misleading loan applications in order to obtain much larger loans than they were qualified to receive; the fraudulent loan applications misstated, among other things, income, assets, employment, citizenship status, and intent of the purchaser to live in the property. As a real estate agent, the defendant profited through real estate commissions on the fraudulent transactions in which she was involved.

This defendant took proactive and affirmative steps to help the conspiracy succeed. For one property transaction, the defendant added a straw buyer to her bank account in order to falsely inflate the straw buyer's assets for purposes of his loan application. For another sale, the defendant purchased a $15,000 cashier's check for a straw buyer to deposit into his own bank account, in order to create the appearance that the straw buyer had assets. On two occasions, the defendant paid a "commission" to another co-conspirator, Fidelino Ferrufino, for his role in

recruiting the straw buyers to purchase the properties. The defendant also collected several commission checks earned by her ex-husband for his role in fraudulent real estate transactions. Finally, the defendant and her ex-husband sold their own home in a fraudulent transaction to straw buyer Maria del Carmen Rapalo. The defendant's brother-in-law, Ruben Rojas, paid Rapalo $5,000 to serve as the straw buyer in that transaction.

During the course of this multi-year conspiracy, the participants engaged in over 30 fraudulent property transactions in the Eastern District of Virginia and obtained over $24 million in mortgage loans to purchase the properties. However, the defendant participated in the conspiracy for just over one year and played a role in approximately eight fraudulent transactions. Although the loss of the overall conspiracy is more than $9 million, the loss resulting from this defendant's direct participation is substantially lower. A sentence of 27 months is thus appropriate and reasonable in light of the defendant's role in the conspiracy, the nature of her criminal conduct, and the harm that it caused.

A sentence of 27 months is also necessary and appropriate to provide deterrence. Mortgage fraud schemes like the one perpetrated by the members of this conspiracy undoubtedly played a role in the recent collapse of the housing market. The real estate market relies heavily on the integrity of all of the participants in the process – including the real estate agents, loan officers, bank officials, and buyers – in order to function properly. It is therefore important that any sentence given to the defendant serve as a deterrent to other real estate agents who may be inclined to falsify loan documents, work with straw buyers, or otherwise commit mortgage fraud.

**III.    Restitution**

The government respectfully requests that, as part of its sentence, the Court order

restitution in the amount of $7,509,849, to be paid jointly and severally with other individuals involved in this conspiracy.[2]  Although the amount of restitution owed by the defendant is known, law enforcement is still working to identify which financial institution(s) suffered the losses for each property at issue.  The government therefore moves, pursuant to 18 U.S.C. § 3664(d), for leave to file a restitution order with the Court within 90 days of sentencing.

**IV.   Conclusion**

Based on the foregoing, the government respectfully submits that a sentence of 27 months of imprisonment is reasonable, but not greater than necessary, to achieve just punishment in this case.  In addition, the government hereby moves the Court to grant an additional one-level reduction in the offense level, pursuant to U.S.S.G. § 3E1.1(b), for acceptance of responsibility. The defendant has assisted authorities in the investigation and prosecution of her own misconduct by timely notifying the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the government and the Court to allocate their resources efficiently.

        Respectfully submitted,

        Neil H. MacBride
        United States Attorney

By:         /s/
        Marla B. Tusk
        Assistant United States Attorney
        2100 Jamieson Avenue
        Alexandria, Virginia 22314
        Phone:  703-299-3700
        Fax: 703-299-3981

---

[2] This restitution figure reflects the overall loss of the conspiracy for the time period during which the defendant was a participant (January 2006 through March 2007).

Email Address: marla.tusk2@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of May, 2010, I electronically filed the foregoing Position of the United States With Respect to Sentencing with the Clerk of Court using the CM/ECF system, which will send a notification of such filing (NEF) to the following:

James Hundley
Counsel for Litcia Linares
jhundley@bhnklaw.com

A copy has also been sent via email to:

Nina Blanchard
Senior U.S. Probation Officer
nina_blanchard@vaep.uscourts.gov

                /s/
Marla B. Tusk
Assistant United States Attorney
2100 Jamieson Avenue
Alexandria, Virginia 22314
Phone: 703-299-3700
Fax: 703-299-3981
Email Address: marla.tusk2@usdoj.gov